THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. JACOB BISHOP.

No. 14,945   (89 Pac. 668.)

SYLLABUS BY THE COURT.

RAILROADS—*Injury by Fire—Special Findings and General Verdict Consistent.* Special findings of fact considered and held to be consistent with each other and with the general verdict.

Error from Stafford district court; JERMAIN W. BRINCKERHOFF, judge. Opinion filed March 9, 1907. Affirmed.

26—75 KAN.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*T. W. Moseley,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued the defendant for damages sustained on account of fires negligently set in the operation of the defendant's trains. The sum demanded was $455 damages and an attorney's fee of $125. The defendant pleaded contributory negligence. After a trial the jury returned a verdict for the plaintiff for $95 damages and an attorney's fee of $70. The jury also returned the following findings of fact, upon which the defendant moved for judgment in its favor:

"(1) Ques. Did Jacob Bishop plant his grove after the railroad was built and in operation? Ans. Yes.

"(2) Q. Did he plant it adjoining the right of way for nearly, if not quite, half a mile east and west? A. Yes."

"(5) Q. How many acres in the whole tract? A. Thirty.

"(6) Q. Are there point rows next to the right of way? A. Yes.

"(7) Q. Is the land sand-hill land? A. Yes.

"(8) Q. Are there sand-hills and sand-draws on the land? A. Yes."

"(10) Q. Had fires occurred in this grove before those complained of in this action? A. Yes."

"(12) Q. Did the parts burned over grow up in grass or in weeds, or in both? A. Yes.

"(13) Q. Did the grass and weeds become dry and combustible in the winter of 1903 and 1904? A. Yes.

"(14) Q. Did said ground also become covered to some extent with leaves and brush? A. Yes.

"(15) Q. Was the grass and leaves and weeds combustible in the winter and spring, easily ignited by fire? A. Yes.

"(16) Q. Did the plaintiff know or have reason to know that fires were likely to be ignited by defendant's trains? A. Yes.

"(17) Q. Did the plaintiff himself ever take any precautions to prevent the ignition and spread of fire in his grove? A. Yes.

"(18) Q. If you answer above question 'yes,' what steps did he take, and at what date? A. By plowing all that could be in June and July, 1904.

"(19) Q. Was the right of way at the time of the fire clear and free from combustible material? A. Yes.

"(20) Q. Did the fires commence on the plaintiff's land in said grove? A. No, it caught in pasture and burned into grove.

"(21) Q. Did they ignite in grass and weeds in said grove? A. Yes, in one count.

"(22) Q. Did they run through said portions of the grove as were covered more or less by grass and weeds? A. Yes.

"(23) Q. Was the grass and weeds and small brush the cause of the fire running in said grove? A. Yes."

"(25) Q. Was the timber filled with grass, weeds and brush? A. No, in part.

"(26) Q. Had the parts burned over been burned over before? A. Yes."

"(28) Q. Was the timber in the blowout and extending to the northeast corner of the grove infested with grass and weeds? A. In some places."

"(53) Q. Did he refuse to allow defendant to burn fire-guards on his pasture and plowland? A. Yes.

"(54) Q. Did he either plow or burn fire-guards in his pasture or plowland? A. No.

"(55) Q. Did he know from experience that fires were likely to occur which would burn the dry grass and weeds unless such guards were made? A. Yes.

"(56) Q. If the guards had been made in plaintiff's pasture and fields is it likely that his grass would not have been burned? A. Probably no.

"(57) Q. Did plaintiff contribute to his damage by refusing to put out fire-guards or refusing to let defendant do so in his pasture and field? A. Yes.

"(58) Q. Did he contribute to his damage by allowing grass and weeds to collect and dry on his premises which were likely to be set on fire by defendant in operating its railroad? A. Yes."

"(60) Q. Was plaintiff's place infested with dry sand-burs? A. Slightly, yes."

"(63) Q. Does not defendant seek to widen fire-guards beyond its right of way because fifty feet on each side of the track is not sufficient to protect adjacent prairies from fire in dry, windy weather? A. Yes.

"(64) Q. Did plaintiff know that defendant desired to protect his premises when it applied for permission to construct fire-guards on his premises? A. Yes.

"(65) Q. Did plaintiff refuse to allow defendant to construct a fire-guard in his grove unless it would pay certain claims of plaintiff for damages? A. Yes."

The motion for judgment on the special findings was denied and judgment was entered on the general verdict. It is claimed here that the special findings show such contributory negligence on the part of the plaintiff that he ought not to recover.

The petition shows that there were in all sixteen fires; that they occurred on ten different days, in three different seasons of the year; that they affected a grove of timber, three pastures, and a field of plowland, and that tracts were burned over on both sides of the railroad right of way. Evidently the jury found both for and against the plaintiff. The verdict is for a small part only of the damages prayed for, and, the evidence not having been brought up, there is nothing to indicate what claim or claims were allowed and what were rejected.

The jury were instructed respecting all the acts of contributory negligence charged in the answer and mentioned in the special findings. Hence it must be presumed that the general verdict relates to claims not affected by want of care on the part of the plaintiff, and if the special findings can be interpreted in such a way that those unfavorable to the plaintiff will not militate against some claim which the general verdict may represent the judgment may be upheld.

Looking further into the petition the court discovers that it describes a grove of timber and an adjoining pasture on the north side and a cultivated field and a pasture on the south side of the defendant's right of way. The findings numbered from 1 to 28, inclusive, clearly relate to the grove and the pasture adjacent to it on the same side of the railroad. The petition also charges that several fires occurred in the grove in Octo-

ber and November, 1904. The special findings do not fix the date of any fire, and for present purposes it may be assumed that the general verdict represents a claim for damages for one of the autumn, 1904, fires.

In the months of June and July, 1904, the plaintiff did all the plowing he could to prevent the ignition and spread of fire in the grove. (Findings 17 and 18.) The timber of the grove was only partly filled with grass, weeds and brush. (Finding 25.) Only some places were infested with weeds and grass. (Finding 28.) Plaintiff's place was only slightly infested with dry sand-burs. (Finding 60.) So far as the record shows the request noted in finding 65 may have preceded the work done by the plaintiff himself in June and July, 1904, to protect his grove.

It is not enough that there may have been grass and weeds and brush and sand-burs on the premises affected by the fire; there must have been a negligent accumulation and toleration of combustible material there to bar recovery. The findings referred to are not sufficient for the court to declare that the plaintiff was negligent in the care of his grove, and it cannot be assumed that the jury took such a view. Therefore the general verdict may be supported by findings concerning land north of the track.

Findings numbered 53, 54, 56 and 57 speak of plowland and pasture, and fields and pasture. The grove is nowhere described as a field or as plowland, and it fairly may be assumed that these findings relate to premises south of the right of way. Findings 55 and 58 occur in the same connection. Findings 63 and 64 affiliate with finding 53, and from findings 19 and 20 it is safe to conclude that the fires in the grove did not come from across the right of way. Conceding, therefore, that this group of findings does show contributory negligence on the part of the plaintiff, they may be interpreted to relate to land south of the railroad, and his right to recover for fires on the other side is not affected by them.

Because the findings are indefinite and incomplete it is impossible to know whether the foregoing classification of them is correct; but it makes the findings consistent with each other and with the general verdict, and because it does this it must be adopted, the province of the court being to uphold and not to overthrow.

The judgment of the district court is affirmed.